Good afternoon. Case number 318-0664, Caterpillar, Inc. v. St. Paul Fire and Marine Company slash Travelers Appellant. Thank you. Good afternoon. Good afternoon, Your Honor. Good afternoon, Your Honor. Mr. Dunn, would you like to proceed? Yes, Your Honor. May I reserve three minutes for rebuttal? You have five minutes under our rules. All right. Thank you, Your Honor. And I'd also like to apologize in advance for my headset. My microphone is not working. May it please the Court. My name is Rory Dunn, and I represent St. Paul Fire and Marine Insurance Company that will also be referred to as the Travelers today and in the briefing. Travelers appeals from the trial court's August 7th order and those leading up to it, which ordered Travelers to produce numerous withheld documents by Travelers on the basis of attorney-client, work product, and insurer-insured privilege. The court ordered the documents produced without redaction and without conducting an in-camera review. The trial court also found Travelers in contempt and imposed sanctions. The trial court entered, excuse me, the trial court erred as Travelers' claims of privilege were supported by detailed, numerous privilege log. They total 500 and some odd pages. Declarations of claims handlers and days and days of deposition testimony of the claims representatives responsible for the case. Nothing in the record suggests that any of Travelers' privilege assertions were incorrect or not in good faith. In essence, the court ordered Travelers to produce its pre-coverage litigation playbook as well as the defense communication of its insured volt because, in the court's view, they're ordinary insurance records. A conclusion, as I will point out, is not supported by the record. Our Supreme Court has repeatedly recognized as to issues of privilege, in-camera review is the accepted method to resolve the issue. Again, our court did not review the documents in-camera, rather taking the end around that these are ordinary business records. Therefore, the trial court, at the very least, was obligated to evaluate the withheld documents in an in-camera review before ordering their production. Instead, he proceeded on the assumption that nothing in the withheld documents, including legal advice and attorney work product, could not be privileged or entitled to any protections. Our review of the record demonstrates Travelers' claims of privilege are appropriate and the trial court's decision should be overturned on that basis. Alternatively, the matter should be remanded to the trial court with instructions to conduct an in-camera review and issue a decision accordingly. Moreover, the trial court also erred in finding Travelers in contempt and opposing sanctions as Travelers' privilege assertions, whether they're right or wrong, they were made in good faith and amply supported by the record. What's at issue? Reading the briefs, it's confusing. So where we are is, let's start with what's not in dispute. We have communications of Travelers with its coverage counsel, as well as with the Kingery firm, who represents Voltz. This is conceded to by Caterpillar in its brief. Caterpillar also concedes that nothing in the second privilege log, which logs the above communications which I just described, are privileged. When you say the second privilege log, you mean the revised one? The second privilege log, Your Honor, was not revised because Caterpillar conceded  Those are the documents between the Aguilera firm and Travelers, the Tomboy firm and Travelers, the Cassidy Mueller firm and Travelers. Okay, thank you. Caterpillar also agrees that an in-camera review can be done of the 171 documents that were sent by Voltz or its counselor to Travelers and to Gallagher, Bassett, and Willis, who are the agent of AIG, Voltz' primary insurer. Frankly, there's really no reason if the court needs to do an in-camera review of those documents, it shouldn't do an in-camera review of all of the documents at issue. However, confusion exists over what is at issue in the court's August 7th order. The order states, This matter comes on for hearing on Caterpillar's motion to award sanctions against Travelers. The court finds the claims and reinsurance documents addressed in Caterpillar's motion are ordinary business documents and are discoverable, and therefore the court orders that Travelers shall produce them in 30 days and reinsurance documents addressed in Caterpillar's motion without redaction. A dispute subsequently arose whether the documents addressed in Caterpillar's motion only refers to certain portions of the withheld documents or all of the withheld documents. As a result, Travelers subsequently argued to the trial court in its motion for clarification that the order was limited to certain documents in the claim file. The court denied Travelers' motion for clarification at the time of the contempt finding. Ergo, there is a question to whether all of the withheld documents need to be produced unredacted without in-camera review. Travelers believes that no production is required of the withheld documents because we've met our burden. We have submitted 590-some-odd pages of logs documenting the privilege. We have submitted declarations describing and supporting the privileges, and we have submitted our representatives to days of testimony where the privileges could be probed. Therefore, we're asking this court to reverse the trial court and find that the documents are privileged and do not need to be produced. I'll also discuss later the alternative basis for that conclusion is nothing in the documents that Caterpillar is seeking will lead to admissible evidence in this case. Alternatively, no production of any documents should be required post the filing date of coverage litigation. This is an easy line. We filed our coverage lawsuit on May 9, 2014. Caterpillar filed its lawsuit on June 23, 2014, and they've already indicated they get that the documents created in the coverage litigation by attorneys or communications of travelers are privileged. If the court does not agree with travelers that we've met our burden, then we're asking the court to order the trial court to conduct an in-camera inspection of these documents because, as I'll discuss, there's nothing ordinary about this claim file. This case involves Caterpillar's attempts and the attempts of its excess carriers to shift a nine-figure exposure for a products liability case involving a fire caused by its engine to Volt and its carrier travelers based on the premise that the work of an employee that Volt provided to Caterpillar's caused the catastrophic failure when, in fact, Caterpillar has suffered other catastrophic failures of this very same engine. Certain undisputed key facts demonstrate there was nothing ordinary about this claim file. The lawsuit against Caterpillar was filed in January 2010. In its investigation of the allegations against it, Caterpillar's developed a list of all the employees involved in the manufacture of the engine. Ross White, the borrowed servant of Volt, is on the list. Nevertheless, the lawsuit goes on for three years. Plaintiffs are pursuing products liability. However, on the eve of trial, well, the trial is ordered in April 2014. In March 2013, the plaintiffs, for less than clear reasons, amend their products liability case to include just a negligence case against Ross White, the line worker in the Caterpillar process. They don't sue Volt. At that time, Caterpillar consults with Coverage Counsel. Caterpillar's consultation with Coverage Counsel is logged as attorney-client, as well as work product. That's in April of 2013. At the end of April 2013, they tender the claim to Volt and ask for indemnity and all of their defense costs paid. And they tell them that, hey, Volt, the trial is a year away. Caterpillar did not seek coverage as an additional insured from travelers until May of 2013. That's three and a half years after the original lawsuit was filed. And they knew about Mr. White. Even though it was not sued, Volt asked its primary carrier AIG to get Defense Counsel involved in September of 2013. Travelers opened its claim file in October and retained Coverage Counsel in mid-November and retained Alabama Counsel to investigate the Bender case in mid-November. That counsel intervened in the Bender action for the limited purposes of monitoring it and participating in the eventual mediation. Volt's counsel, the Boylan firm, started providing travelers with reports in 2013. Travelers issued its reservation of rights to Caterpillar, reserving its rights on your work in November, at the end of November 2013. This demonstrates that by mid to late November 2013, all the parties in this case had lawyered up. Volt had counsel, Travelers had counsel, Caterpillar had counsel. Thereafter, Caterpillar finally got around to suing Volt in February of 2014. The Bender case, the underlying case, was settled for $46 million in April. Then, as I mentioned before, Travelers sues Caterpillar in May over coverage of the Bender settlement. Then Caterpillar sues Volt, Travelers, and Peoria, this court, in June. And in July, Travelers assumes the defense of Volt from AIG. These facts demonstrate, without question, that Caterpillar's claims that all of the Travelers' communications from the time of its reservation of rights at the end of November until the filing of the Caterpillar coverage litigation are not ordinary business documents, as the trial court found. Everybody was ready for litigation. They had the lawyers doing the work, and that's what the filed documents address. So how did we get here with the judge? Well, the problem has been Caterpillar's inconsistency with what it's being sought. And I apologize, I have to look at my notes because this is confusing. But in Caterpillar's December 2017 motion to compel, it included a request for Volt's withheld documents. Those are the documents we claim are insured privilege because they were provided to us by Volt and Caterpillar. At that hearing, Caterpillar argued, do we want things that are unique to the defense they are providing to Volt? It said no. So this covers the entire universe of the documents that Travelers considers and held back based on insured privilege. So the universe, just to put it back in perspective, the entire universe of documents we're talking about, with some exceptions, are from the coverage litigation up until October, or back until October 2013. That's what the court has ordered to be produced based on the fact that they're business documents, which I just established are not. So with regard to the inconsistencies caused by Caterpillar, there was the issue of whether or not all documents before coverage litigation were privileged. Caterpillar stated, do we want things after this litigation was commenced? It said no. So our position is, given that position, anything on the privilege logs and the withheld documents, they acknowledge, are not fair game. In fact, our attorney client and our work product, and let me stress something because I don't think I'm going to get to it in my argument. We have produced 25,000 pages of documents. What we haven't produced, the withheld documents, are a small subset of those documents. Approximately how many are we talking about? Your Honor, we tried to figure that out, and between the redacted documents and the completely withheld documents, we could not figure that number out. And it's a lot, Your Honor, because, again, we're talking about documents generated by Volt's lawyers, documents generated by our lawyers, which we had two. We had coverage lawyers. We had lawyers monitoring the vendor case. And then we have all our communications with those individuals as well as our internal communications discussing this potential nine-figure exposure. So in addition to whether or not the documents post-litigation are at issue, and potentially the biggest inconsistency is created by Caterpillar with regard to the March 21st order requiring production of withheld documents. The order stayed production of travelers of certain withheld documents pending an in-camera review and ordered travelers to amend its privilege logs, which we did, thus implying that the March 18th order did not require travelers to produce privileged documents. Acknowledging this, Caterpillar in a May 18th filing stated the March 21st 2018 order required travelers to produce non-privileged claim files. However, on June 29th, 2018, Caterpillar reversed course and filed the motion contending that travelers had failed to comply with the March 21st order and a May 30th order because some of the documents that we did produce were redacted for the very same reasons that the court allowed us to amend our privilege logs. Caterpillar argued that the court had actually rejected travelers' privilege arguments at the March 24th hearing. Caterpillar's September 24th filing argues that the court had already rejected travelers' assertion of privilege. That's just not true, and the record proves that. I'm out of time, Your Honor. I just want to, if you'll indulge me, quickly address one last point, and that is, why are we doing all this? And Caterpillar says we're doing it to obtain facts on the notice issue, which in Illinois, prejudice is presumed. Recall, we have three and a half years here. Moreover, if they want to look at prejudice, the facts of prejudice are concerned, the underlying file, and any delays in notifying us of that that may cause prejudice. Again, nothing in our litigation or our coverage file is going to talk about that. They also want to talk about discovery on your work, which is a coverage provision that numerous Illinois courts have found to be unambiguous. Therefore, factual discovery is not necessary. And finally, they want to do discovery on vexatious and unreasonable. And our Supreme Court in Waste Management has said that the insured controls the facts that deals with coverage. And Waste Management is a really important case here because it involves the court's proclamation that work product and attorney-client privilege of a carrier in anticipation of litigation is protected. We've met our burden showing that this is protected. Yes, Your Honor. All right. Thank you, Your Honor. Mr. Reedy, am I saying that correctly? You are. Thank you, Your Honor. Good afternoon. May it please the court. Andrew Reedy on behalf of the appellee Caterpillar Inc. and from the law firm Loewenstein-Stanler. I would like to start with the most fundamental of propositions. Travelers has the burden to demonstrate privilege exists and applies. And under Illinois law, privilege assertions are narrowly construed to promote and encourage discovery. You're going to hear two very different stories of what's gone on in this case and what the discovery that we're focused on in this case on this appeal is Caterpillar is seeking discovery to help prove its claims against travelers. It's insurer under the Volt program for claims including bad faith. We're trying to find out the basis for their position on coverage and Mr. Dunn referred to the $46 million settlement of the underlying ship fire case in Alabama. Mr. Gary Mann testified that travelers contributed $3 million to that of their $25 million limit on behalf of Caterpillar. So in this discovery, we're in part trying to understand the basis upon which Mr. Mann paid $3 million towards settlement and not the entire limit, not some other number. What they've done is Mr. Mann, a non-attorney who's conducted this claim handling. They've blocked all the documents from basically his first involved with the Caterpillar claim in October of 2013 by either withholding the document entirely or redacting it. Your honor asked how many how many documents we're talking about. This is a ballpark figure might help the court somewhere between 3000 and 5000. It's hard to count them in part because there are families of documents. Some are duplicates. Some have email chains, but that will give you a frame of reference. The travelers witnesses testified that the documents related to Caterpillar's claim for coverage are in the claim file. They also testified that Mr. Mann, the non-attorney claims handler, his job was to investigate the claim against Caterpillar to assess liability against Caterpillar in that vendor case in Alabama and to analyze the insurance coverage under the travelers policy. Travelers response to all of this has been to fight and fight and switch positions and fight and switch positions. They heavily redacted all the documents. One look should not look any further than Judge McCuskey's statements at the March 21st 2018 hearing. He actually took a document that is record number one is the document at E16-147. It was exhibit one at the hearing and it's a completely redacted document everything taken out of it. And he said, I quote, I've never looked at anything like this. Hardly anything allowed to be disclosed. What did he do with that May 7th hearing? He granted a motion to compel Caterpillar's motion to compel claims and reinsurance documents. The claims documents, there was no showing of privilege whatsoever. And with respect to the reinsurance documents, travelers didn't even argue that those documents were privileged at hearing. Go to the next hearing. Travelers made a motion for reconsideration of that that order. What did they do? They argued reconsideration of the reinsurance part, but not the claims part. So as of May 30th, we have a record where travelers is not asserting any privilege over reinsurance. And they have not appealed an order compelling them to produce privilege. I have heard the argument before that they weren't arguing privilege in that first motion. One need only look at the transcript and at their brief, see how much they are arguing privilege. I believe nine pages were devoted to privilege. By the travelers lawyers. It was before Mr. Dunn's time in this case. And it was a another attorney from a different firm. Were they covered by the log? The log at that point had no to's and no from's. It was, you couldn't even tell what the documents were. So that Judge McCuskey ordered the logs to be redone. And they were redone subsequently. So when they were redone, were they covered by the logs? What covered by the logs? The documents that you were just talking about. They supposedly are the documents that Mr. Mann had. Yeah. Are these the 3,000 or so withheld communications, the e-mails that then Rebecca Williams submits an affidavit that she's been involved and was the attorney. For the reason that they contain her impressions that those are subject to privilege. Is that what you're talking about that's relative to this order, Mr. Reedy? No, Ms. Williams did not submit her declarations, plural, until the fourth round of briefing and in connection with the fourth order to produce these documents. Okay, thank you. And that's one of the points that Caterpillar is trying to make is its positions of travelers. They, for example, in the trial court, never indicate to Judge McCuskey who was in the control group. They assert attorney-client privilege, but they don't tell the judge who's in the control group. What's the import of the successive 1, 2, 3, 4 positions? In the sequence there, basically there's a couple of things. The first is, it indicates that the judge had worked very diligently, had four hearings and 15 briefs that he considered. In addition, the significance is they are making new arguments by the time the fourth argument is made, including arguments that never made before. And one of the arguments that we made in the fourth round and that Judge McCuskey agreed with was that these were untimely motions for reconsideration and he rejected the new arguments, including the Williams affidavit, in part for untimeliness. Well, that's the reason I'm asking the question, because it appears that in the successive go-arounds, the nature of the arguments are changing and, you know, like, we'll try this and then we'll try that. Yes, the travelers clearly did that. They were ordered to produce the documents at successive points. The first motion to compel, there was a date. On the motion for reconsideration, there was a new date to produce the documents. On the motion for sanctions, the court denied the sanctions, but in the second attempt to get sanctions, but reordered new dates for the production of documents. And then in the fourth round, again, there was the order of denying the motion for protective order. So there is a repeated ignoring of the date to produce documents by travelers and Judge McCuskey recognizes that. And it's one of the basis which he sanctions travelers for blowing off the date that the production was supposed to be made for claims documents. With successive changes in their argument. Correct. Did they ever change which were the privileged documents? I don't know that they've ever been clear enough for me to tell the scope of the privileged documents, because at the beginning, there were no tos and froms, so I don't know who they were asserting it over. And then as the logs change, they made some productions, but the productions are heavily redacted. So it's hard for me to tell exactly what, but the core group of documents have been an issue the entire time. There's this assertion that's crept into the discussions, which is really startling, which is that in the claims file that they kept with Caterpillar's claims, the testimony is they kept a common claim file for Volt and for Caterpillar. They did so all through 2013 until 2014 when Caterpillar filed a claim against Volt, and then they created a separate claim file for Volt. Now that separate claim file is not, we're not seeking that. We're seeking in this discovery, the claim file that it involves CAT's documents, even though it may have had some Volt documents in it. I think it's really important to focus on what Volt is arguing, and really Travelers here. Travelers is arguing there are privileged documents from Volt in this claim file. They have a pending count in this case. Travelers counterclaim number four alleges there's no coverage for Volt under the Travelers policy. Nothing could be more basic than if there's complete adversity between parties, there is no privilege. There's complete adversity because they claim there's no coverage for Volt. Counterclaim four, filed in 2014, never been amended, never been With respect to the insured privilege that is suggested by Travelers and the Volt documents. That privilege is only for a certain type of communication and it has several elements, none of which are met. The, for example, you must prove and show if you're arguing that privilege that the dominant purpose of the communication is to transmit information to an attorney for the prosecution or protection of the insured, or I should say protection of the insured. Travelers can't prove any of those things. These are ordinary claims documents. The Illinois regulations provide that insurance regulations that an insurance company has to keep claims documents in the ordinary course of business. So that the claim activity can be reestablished and reconstructed. What they would like to do is cloak all of this documents and what it would do is, think about it, you make a claim to your insurance company. And they say at the end of their investigation, we'll only pay you X. You say, why? What's the basis? Is it a policy? Is it a factual issue? What's the basis? And they say, we're not telling you anything. It's all work product. That's essentially what they're saying here. The documents that are submitted all through 2013, the investigation Mr. Mann is conducting, all the way up to 2014 when we go to the settlement meeting in Alabama, they're protecting all of that information. It's all pre-litigation, prior to this litigation. It's also prior to a claims determination by travelers. There is case law in Illinois, including Continental versus Marsh, for the proposition that before a claim determination is made, there can be no work product. And that's essentially, this cloak is what the court is trying to prevent. As a party who has a bad faith claim, the way we're going to be able to demonstrate the bad faith is by looking at what the claims handler did. What facts did he look at? What evidence did he look at? What did he highlight? What did he ignore? How did he read the policy? Did he read it correctly? Did he read it incorrectly? What is the basis? What's the factual basis? What's the analysis? The analysis of a non-attorney claims handler is discoverable, but travelers won't give it up. Not after four rounds of briefing and orders in the trial court. There are considerable, there's a question about in-camera review, and I want to directly address that. First of all, in-camera review was not asked for by travelers. If you look at the first round of briefing, with respect to privilege, as I mentioned, the motion to compel, there were two different things at issue. One was the claims documents, and the second was the reinsurance documents. Travelers didn't claim, ask for an in-camera review with respect to the claims documents back in the first round. They asked in-camera review on relevance for reinsurance documents. The court rejected that, and then on the motion to reconsider, they didn't ask for an in-camera review. So all the way through May 30, 2018, there have been a bunch of briefs filed, two orders, and the only request for in-camera review by travelers or Volt was for in-camera review on relevance for reinsurance. They only turned to in-camera review when they had lost the privilege issue, and they wanted to redo over. That's not the purpose of an in-camera review. In the Newesco case that we cite, cautions against having the trial court be a dump for doing privilege reviews. Travelers' methodology here would lead to gamesmanship because you could lose and then say, all right, well, we're just going to give everything to the trial court to look at. Well, you agree that there is the necessity on certain occasions for in-camera review, correct? I do, and I would suggest that there are two things that would warrant that. One is factors to look at. One is whether there's a threshold showing a privilege, and I don't believe if you look back, there's any threshold showing a privilege here. And the second is whether a party requests one. These are factors that the court should look at. I see my time has expired. Thank you. Thank you, Mr. Reedy. Mr. Dunn, any rebuttal? I want to address the issue of the perception that Travelers has taken inconsistent positions throughout the discovery process. We have consistently maintained that certain documents are privileged and are work product. The reason there are six privilege logs is because we have produced in different batches different information. And so each of the privilege logs deals with different information. Our position has been consistent that it's privileged and we've logged it. We showed the recipients when they questioned the sufficiency of the logs, we amended them. And there was no ruling in March that we had to produce the documents and thus no need for a request for in-camera. When it became clear after we produced two different sets of new documents that the court was going to reverse course based on the incorrect assumption of ordinary the documents were produced in the ordinary course, we again reiterated the in-camera request which is made in numerous briefs where we point out if you have questions, judge, you shouldn't hear. But if you have questions, in-camera is what you do. Further, as to Mr. Reedy's comment about not having a common interest with Volt, his client's claim, and he's got coverage lawyers, he's got defense lawyers, is that Volt's work caused the malfunction of the diesel motor. Travelers and Volt gain a benefit from the efforts of Volt's counsel in determining whether or not that claim is legitimate. Volt started that process in September. Therefore, we requested and then logged all the communication from Volt's defense counsel. There is no doubt there is a common interest. And as recognized by the Supreme Court in waste management, we can have a common interest, but a third party like Caterpillar isn't entitled to the documents. And that's what we're fighting about here. They know they're not entitled to the documents. They convinced the judge that these are ordinary course documents and the facts don't confirm that. Isn't the argument that there is a decision made by travelers that Volt was not entitled to any coverage under the policy because they've done something that invalidated? Absolutely not. That's what we're fighting about still. We don't have a determination as to Caterpillar. We reserved rights as to Caterpillar, and that's what the coverage litigation is about, whether or not Caterpillar's liability arises out of Volt's work. As to Volt, we're defending it. The case law is if you have a duty to defend and provide a defense, there's a common interest. We're defending Volt. Moreover, we've said to Volt, if somehow you're responsible for the property damage occasioned by Caterpillar, we're going to pay for it, except for that small portion that's Volt's work. That's our policy language. But no, Your Honor, we have not denied coverage to Volt. In fact, we're providing them a defense, and the coverage issues are still undecided. They're being litigated in the underlying case. So yes, we have a common interest with Volt, absolutely. In fact, we're paying for their lawyers. That's a different thing, paying for the lawyers and whether or not there's coverage. Those are two different things. The defense and indemnity. And as Waste Management points, we can have a common interest. And if, in fact, we lose to our common interest, Caterpillar, and it changes and there's a fight about coverage, then we can become adversaries. But that doesn't change the common interest we have in proving that Caterpillar's liability did not arise out of Volt's work. If we prove that, if Volt proves that, they don't have an indemnity obligation to Caterpillar, and we don't have a coverage obligation to Caterpillar. Because our coverage obligation to Caterpillar, they're insured only if their liability arises from Volt's work. And here, Volt denies that their liability arises from Caterpillar's work and, in fact, relies on its contract. And you'll hear about more of that from Mr. O'Donnell in a bit. But their contract says Caterpillar's responsible for training and supervising these people. How on God's earth could Volt be responsible for Mr. White's work? Thank you, Your Honors. I appreciate your attention. Thank you, Mr. Dunn. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess. Thank you.